IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FATEMEH NAJAFIAN | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | Civil Action No. 1:12-cv-01408 |
| | ) | |
| EDUCATION CREDIT MANAGEMENT CORPORATION | ) ) | |
| | ) | |
| Appellee. | ) ) | |

### MEMORANDUM OPINION

Appellant Dr. Fatemeh Najafian ("Najafian" or "Appellant") has filed a notice of appeal (Doc. No. 1) from orders dated October 9 and 12, 2012, entered by the United States Bankruptcy Court for the Eastern District of Virginia in an Adversarial Proceeding, Case No. 11-01650 (Doc. No. 1-1 [hereinafter Bankr. R.]), denying her request for a hardship discharge of student loan debt pursuant to 11 U.S.C. § 523(a)(8) (Doc. No. 1-18 [hereinafter Bankr. Order]), dismissing the adversary proceeding (Bankr. R., Ex. 19), and denying her motion for reconsideration (Bankr. R. 78-79). For the reasons stated below, the Bankruptcy Court's decision is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Najafian is 65 years old, unmarried, and has no dependents. Bankr. Order 2. Najafian's formal education has spanned more than thirty-two years, during which time she earned a Bachelor's Degree from a university in Iran in English Literature and Language and Persian Literature and Language; a Master's Degree from George Washington University in Special Education with a specialty in diagnostic prescriptive teaching; and an M.D. degree from

1

Georgetown University School of Medicine. *Id.*; Bankr. R. 13.[1] She has also completed, with the exception of her thesis, a doctoral program in education at George Washington University, pre-med courses at Howard University, and a year taking graduate level education courses at Georgetown University's Minority Program. Bankr. Order 2; Appellant's Br. 10, Doc. No. 3 [hereinafter Appellant's Br.]. Najafian took out multiple student loans to finance her education.[2] As of December 21, 2011, the principal balance on these student loans was $346,806.25; and the total amount due and owing is $443,276.38, which includes $10,057.05 in unpaid interest and $86,413.08 in statutory fees. Bankr. R. 9.

Najafian also has a substantial work history, both before and after she obtained her medical degree. Pertinent for the purposes of this appeal is that after earning her medical degree, Najafian completed an internship in internal medicine, one residency, and three fellowships in ophthalmology. Bankr. Order 2-3. Following her fellowships, Najafian held various positions in her field until 2001, when she took a position with Capital Eye Physicians and Surgeons ("Capital Eye") in Washington, D.C. *Id.* at 3. During her employment with Capital Eye, Najafian earned a yearly salary of between $90,000 and $160,000, lived a frugal lifestyle, and remained current on her student loan payments. *Id.* at 3-4. Capital Eye terminated Najafian in March of 2006. Appellant challenged her termination in a binding arbitration, prevailed and was awarded $93,000. *Id.* Despite her extensive efforts to obtain employment as an ophthalmologist all over the country, Najafian has not worked since her termination from Capital Eye in March 2006, and "was forced to stop making payments on her student loans." *Id.* at 3-5. She has not made any

---

[1] The following is based on a compilation of the record of Najafian's history of proceedings in bankruptcy court, as well as answers she provided to sets of interrogatories for those proceedings.

[2] Najafian currently owes money on nine student loans; one of the nine represents several loans that were consolidated on October 26, 2007. Bankr. R. 9.

student loan payments since 2006, although she offered Sallie Mae her entire $93,000 arbitration award in full payment of her outstanding student loan indebtedness, an offer that Sallie Mae refused. *Id.* at 4-5.

On October 2, 2009, Najafian filed a voluntary petition for Chapter 7 bankruptcy and was granted a discharge on January 11, 2010. Bankr. R. 108. On December 5, 2011, she filed an adversarial proceeding against Sallie Mae, Inc., seeking a hardship discharge of her student loan debt. *Id.* at 12. The Bankruptcy Court subsequently granted the motion of Education Credit Management Corporation ("ECMC") (the "Appellee") to substitute itself as the defendant in the adversarial proceeding due to the transfer of interest from Sallie Mae, Inc., to ECMC. *Id.* at 63.

In response to her request for a discharge of her student loan indebtedness, the Bankruptcy Court ruled that Najafian did not qualify for a "undue hardship discharge" under 11 U.S.C. § 532(a)(8) because she did not satisfy all three elements of the test for such a discharge established in *Brunner v. N.Y. State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (the "*Brunner* test"), adopted by the Fourth Circuit in *Educational Credit Management Corp. v. Frushour*, 433 F.3d 393, 400 (4th Cir. 2005) [hereinafter *In re Frushour*]:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents, if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Bankr. Order 9.

There is no dispute that Najafian satisfied the first element of the *Brunner* test. *Id.* However, the Bankruptcy Court found that Najfian failed to satisfy the second and third elements of the *Brunner* test in light of (1) her extensive education and the likelihood that she could obtain gainful employment, even if not as an ophthalmologist; and (2) her refusal to take advantage of

3

loan forgiveness programs for which she qualified. Bankr. Order 5-6 & 11-14. In an Order dated October 9, 2012, the Bankruptcy Court denied her request for a hardship discharge and dismissed the adversary proceeding. Bankr. R., Ex. 19. On October 12, 2012, the Bankruptcy Court denied Najafian's Motion for Reconsideration. Bankr. R. 78-80.

On October 11, 2012, two days after the Bankruptcy Court issued its order denying the request for hardship discharge, Najafian filed a Notice of Appeal with this Court. Doc. No. 1. In Appellant's Statement of the Issues to be Presented on Appeal, Najafian identified seven issues for appeal:

> (1) Did The Bankruptcy Court and Honorable Judge Brian F. Kenney acted impartial, and followed the codes of conducts required? (2) Did The Bankruptcy Court and Honorable Judge Brian F. Kenney broke the law not act impartial, and not followed the codes of conducts required and "defaming" and harming Najafian? (3) Did Sallie Mae, Inc., ECMC, by Counsel Rand Gelber comply with the Law and Standard of conducting business? (4) Was under the applicable law(s), Rules, Dr. Najafian's Medical Educational Loans dischargeable? (5) Was Dr. Najafian's Burden of Proof to be within "reason", or does Burden of her Proof have no limits; and disregards out of her control circumstances, obstruction, and hindrance? (6) Was Dr. Najafian's burden of proof hindered and obstructed by the Sallie Mae, Inc., ECMC, by Counsel Rand L Gelber? (7) Was Dr. Najafian burden of proof hindered and obstructed by the Honorable Bankruptcy Judge.

Bankr. R. 96. A hearing was held before this Court on March 1, 2013, at which time the Court took the matter under advisement.

## II. STANDARD OF REVIEW

On appeal, federal district courts review a bankruptcy court's factual findings for clear error, and its legal conclusions *de novo*. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). The *Brunner* test requires the debtor to prove each factor by a preponderance of the evidence. *In re Frushour*, 433 F.3d at 400. Because Najafian's entitlement to an undue hardship standard is a legal question to be determined based on the particular facts and circumstances

4

pertaining to her, the Bankruptcy Court's decision presents for review mixed questions of law and fact. *See id.* at 398.

### III. ANALYSIS

Generally, student loan debts are non-dischargeable. *Burton v. Educ. Credit Mgmt. Corp.*, 339 B.R. 856, 868 (Bankr. E.D. Va. 2006) [hereinafter *In re Burton*]. However, student loans may be discharged if the debtor demonstrates that the repayment will cause the debtor or her dependents "undue hardship." 11 U.S.C. § 532(a)(8). The Bankruptcy Code does not define the term "undue hardship." Nevertheless, the Fourth Circuit, as other Circuits, in adopting the *Brunner* test, concluded that "[b]ecause Congress selected the word 'undue,' the required hardship under § 523(a)(8) must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship." *In re Frushour*, 433 F.3d at 399. Thus, this Court will review the Bankruptcy Court's findings of fact as they relate to the elements of the *Brunner* test for clear error, and its conclusions that those facts do not satisfy the *Brunner* test *de novo*.

*1. Inability to maintain a minimal standard of living.*

The first *Brunner* test element requires a showing "that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents, if forced to repay the loans." *In re Frushour*, 433 F.3d at 400. The record shows that Najafian is unemployed, homeless, living out of her car, sleeps in public parking lots, and relies on public restroom facilities for her personal needs. Bankr. Order 2 & 4-5. There is no dispute that Najafian is unable to maintain a "minimal standard of living," and the Bankruptcy Court so found. The Bankruptcy Court's factual findings were fully supported by the evidence and was

5

not clearly erroneous; thus, it correctly concluded as a matter of law that Najafian had satisfied the first element of the *Brunner* test.

### 2. *Persistence of the current situation.*

The second element of the *Brunner* test requires sufficient proof "that additional circumstances exist indicating that [her] state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *In re Frushour*, 433 F.3d at 400. The Fourth Circuit considers this element to be "the heart of the *Brunner* test." *Id.* at 401. To satisfy this element the debtor must prove that a "'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." *Id.* Some examples of circumstances that qualify include "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id.*

In determining whether Najafian satisfied this element, the Bankruptcy Court focused primarily on Appellant's prospects for future employment given her education and intellect, her attempts at finding a job since her termination from Capital Eye in 2006, and any additional circumstances that would evidence a "certainty of hopelessness." After reviewing the evidence, the Bankruptcy Court found that Najafian did not satisfy this element for several reasons.

First, with respect to her earning potential, the Bankruptcy Court concluded that while Najafian is nearing the end of her working life and has been unable to secure employment in her field, despite her best efforts, her refusal to seek work other than as an ophthalmologist essentially precluded a finding that her current situation was sufficiently intractable to justify discharge. Bankr. Order 10-11. The Bankruptcy Court also considered Najafian's testimony about her age and physical difficulties and found that insufficient to satisfy her burden of proof. The Bankruptcy Court also noted that she presented no evidence of mental illness or mental

6

health issues, through mental health professionals or otherwise, that would establish the required conditions for discharge of her student loans. *Id.* at 10-11 (finding that there was no proof of a "certainty of hopelessness" ).

The Court concludes that the Bankruptcy Court's factual findings pertaining to this second element were not clearly erroneous. The Court also concludes that the Bankruptcy Court did not err as a matter of law in concluding that Najafian's decision to narrowly limit her search for employment precluded her satisfying this second element of the *Brunner* test.[3] Najafian is a highly educated woman with multiple degrees from a number of prestigious universities. *Id.* at 2. Prior to attending medical school, she worked at Perception International, Inc., as a bilingual educational consultant, and was a teacher's assistant in biochemistry and physiology at Georgetown University School of Medicine. *Id.*; Bankr. R. 91. By Najafian's own admission, a good portion of the money she paid in to Social Security predated her time as a physician. Appellant's Br. 13. While employment outside of her practice of medicine may not be ideal from her perspective, courts, applying the Bankruptcy Code, have required a debtor to work in a field outside her field of study if necessary. *See In re Frushour*, 433 F.3d at 401 (citing *U.S. Dep't of Educ. v. Gerhardt*, 348 F.3d 89, 93 (5th Cir. 2003) ("[N]othing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which he was trained . . ."); *O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 566 (7th Cir. 2003) ("[I]t is not uncommon for individuals to take jobs not to their liking in order to pay off student loans.")).

---

[3] The Bankruptcy Court also found unavailing Najafian's claims that her inability to obtain work was due to circumstances outside of her control, including that she had been black-listed from the field of Ophthalmology. Even if this claim were accepted, Najafian's insistence on working only as an ophthalmologist would be even more unreasonable.

7

### 3. *The Appellant has made a good faith effort to repay her student loans.*[4]

The third element of the *Brunner* test is whether the debtor has made good faith efforts to repay the loans. In considering the debtor's good faith, a court will consider, *inter alia*, (1) a debtor's "efforts to obtain employment, maximize income, and minimize expenses" (*In re Frushour*, 433 F.3d at 402); (2) whether a debtor has willfully or negligently caused her own hardship (*see id.*; *see also In re Burton*, 339 B.R. at 882); and (3) whether the debtor actually paid the debt while she was able, investigated loan consolidation options, and sought deferrals and/or a forbearance (*see In re Frushour*, 433 F.3d at 402; *see also Floyd v. Educ. Credit Mgmt. Corp.*, 54 Fed. App'x 124, 146 (4th Cir. 2002); *In re Burton*, 339 B.R. at 884-85).

It is undisputed that Najafian minimized her expenses and lived a frugal lifestyle, even while earning $160,000 per year as a physician. Bankr. Order 4. She also made substantial payments towards her debt while she was employed and offered Sallie Mae her entire $93,000 arbitration award to settle the balance of her outstanding student loan debt. *Id.* These facts reflect good faith Najafian's part. *See In re Burton*, 339 B.R. at 883 (citing decisions of several courts in the Fourth Circuit where the good faith requirement was satisfied when the debtor had made substantial loan payments). The Bankruptcy Court found a lack of good faith, however, largely based on Appellant's refusal to participate in one of two loan repayment programs—the Income Contingent Repayment Plan ("ICRP"), 34 C.F.R. § 685.209, or the Income Based Repayment Plan ("IBRP"), 34 C.F.R. § 685.221.[5] Under both plans, the borrower is required to make monthly payments based on a percentage of her adjusted gross income or discretionary income;

---

[4] Because the *Brunner* test is conjunctive, Appellant's failure to satisfy the second factor mandates that this Court affirm the Bankruptcy Court. *In Frushour*, 433 F.3d at 400-01 (citing *Brunner*, 831 F.2d at 396). Nevertheless, the Court will consider the third factor.

[5] Although not discussed by the Bankruptcy Court, a lack of good faith can also be inferred by Nafajian's failure to make any further payments after Sallie Mae refused to the substantial debt forgiveness that Najafian proposed.

after 25 years of participation the borrower is then eligible for loan forgiveness for any remaining balance. Bankr. Order 12-13. As the Bankruptcy Court noted, "[u]nder either option, according to ECMC, Dr. Najafian would have an estimated payment of *$0.00 for 300 months*, at which point the loan would be forgiven." *Id.* at 13 (emphasis in original). Even after Najafian begins receiving $1300 per month from Social Security next year (2014), her estimated payment obligation would remain at $0 as Social Security income is not considered to be a type of income that would trigger payments under the ICRP or IBRP. *Id.* Despite assurances concerning the terms of the loan programs, Najafian repeatedly rejected participation in either program, citing fears that her participation in the programs would jeopardize her Social Security, subject others who provided references for her to financial liability, and impose on her future tax burdens. *Id.* at 5-6 & 13.

Based on the record before the Court, Najafian's refusal to participate in these available programs is objectively unreasonable. As the Bankruptcy Court observed, Najafian's "obstinate refusal to consider any alternative repayment program [was] baffling to the Court." *Id.* at 14. This refusal, together with her unwillingness to obtain a job other than as an ophthalmologist, led the Bankruptcy Court to find a lack of good faith on her part to repay the loans or consider an alternative. *See In re Frushour*, 433 F.3d at 402; *see also In re Burton*, 339 B.R. at 888-89 ("[F]ailure to consider such an alternative is not a *per se* indicator of bad faith on its own, it must be considered in conjunction with other evidence and weighs against a possible finding of dischargeability.") (citations omitted). The Bankruptcy Court's findings of fact with respect to whether Najafian was acting in good faith, as required, were not clearly erroneous. The Court also concludes that the Bankruptcy Court did not err as a matter of law in concluding that Najafian did not satisfy the third element of the *Brunner* test.

## CONCLUSION

For the above reasons, the Court concludes that the Bankruptcy Court's finding of fact that pertain to its decision that Najafian's student loans were non-dischargeable were not clearly erroneous and that based on those facts, the Bankruptcy Court did not err as a matter of law in finding that Najafian was not entitled to an undue hardship discharge of her student loans. The Bankruptcy Court's Order dated October 9, 2012, (Kenney, J.) denying Appellant's request for a hardship discharge [Doc. No. 1-18] is therefore AFFIRMED and Appellant's appeal [Doc. No. 1] is DENIED.

The Court will issue an appropriate Order.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 5, 2013